EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Consejo de Titulares del Condominio Millennium<br><br>Peticionarios<br><br>v.<br><br>Rocca Development Corp., et als.<br><br>Recurridos | Certiorari<br><br>2025 TSPR 6<br><br>215 DPR ___ |

Número del Caso: CC-2023-0693

Fecha: 15 de enero de 2025

Tribunal de Apelaciones:

    Panel Especial

Representantes legales de la parte peticionaria:

    Lcdo. Eric Pérez-Ochoa
    Lcda. Glorimar Irene-Abel
    Lcdo. Diego A. Bernal Ríos

Representantes legales de la parte recurrida:

    Lcdo. Juan J. Vilella-Janeiro
    Lcdo. Reynaldo J. Salas-Soler
    Lcdo. Roberto Lefranc-Morales
    Lcdo. Luis Martínez-Lloréns
    Lcda. Margarita Rosado-Toledo
    Lcdo. Giancarlo Font García

Materia: Vicios de Construcción; Daños y Perjuicios - Si los pagos emitidos por una aseguradora bajo una póliza de seguros por daños a la propiedad causados por un huracán extinguen cualquier reclamación o reducen la indemnización en una acción decenal independiente y pendiente por vicios o defectos de construcción.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Consejo de Titulares del Condominio Millennium<br><br>Peticionarios<br><br>v.<br><br>Rocca Development Corp., et als.<br><br>Recurridos | CC-2023-0693 | <u>Certiorari</u> |

Opinión del Tribunal emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 15 de enero de 2025.

El caso ante nuestra consideración nos exige responder si los pagos emitidos por una aseguradora bajo una póliza de seguros por daños a la propiedad causados por un huracán extinguen cualquier reclamación o reducen la indemnización en una acción decenal independiente y pendiente por vicios o defectos de construcción. Para ello, debemos evaluar por primera vez el alcance de la doctrina de fuente colateral en pleitos de este tipo. Adelantamos que al evaluar las circunstancias independientes y particulares que provocaron los daños a la propiedad, y por tratarse de un beneficio o compensación colateral con origen y propósitos distintos, no está presente una doble compensación improcedente u

acumulación indebida de indemnizaciones. Por tanto, contestamos en la negativa.

Expuesta la médula de la controversia, procedemos a exponer los antecedentes fácticos que la originaron.

I

El 2 de septiembre de 2010, el Consejo de Titulares del Condominio Millennium (Consejo de Titulares o Peticionario) presentó una demanda por defectos de construcción y daños y perjuicios en contra de Rocca Development Corporation, F & R Contractors, Corp., Plusmech Contractors, Inc., el Ing. Jorge L. Robert Vizcarrondo, ACE Insurance Co., Triple S, Inc. y otros (Recurridos).[1] En esencia, alegó que el Condominio Millennium adolecía de múltiples defectos de construcción que lo hacían inadecuado para su uso y disfrute, y que los codemandados eran responsables por la ruina potencial y funcional del inmueble por todas las violaciones a los códigos y reglamentos de construcción.[2] Solicitó la reparación definitiva de los

---

[1] El 13 de enero de 2016, el Tribunal de Primera Instancia anotó la rebeldía a Plumesh Contractors, Inc.

[2] Algunos de los vicios y defectos de construcción que se alegaron en la demanda son: techo sin los declives necesarios, sin material aislante intermedio y sin un sistema de drenaje funcional; filtración de agua por los extractores de aire; parapetos que ocasionan filtraciones; problema de filtraciones en al atrio y su tragaluz; grietas, manchas y corrosión en los elementos estructurales; sistema de drenaje inadecuado en el estacionamiento; conexión ilegal del sistema sanitario a los sistemas pluviales de la Ave. Fernández Juncos, entre otros. Por otra parte, el 23 de marzo de 2017, el Peticionario presentó una Segunda Demanda Enmendada.

vicios y deficiencias existentes, el reembolso de los gastos incurridos para mitigar los daños y corregir los defectos, los daños económicos, y la pérdida de valor en el mercado del inmueble, entre otros.

De otra parte, en el 2017 el Consejo de Titulares presentó una reclamación directa e independiente a su aseguradora, Mapfre Praico Insurance Company (MAPFRE), por los daños que el paso del huracán María ocasionó en el inmueble, por los cuales fue debidamente resarcido.[3]

El 14 de julio de 2020, los Recurridos presentaron ante el Tribunal de Primera Instancia una primera solicitud de sentencia sumaria parcial. En esta, argumentaron que debía desestimarse la causa de acción de vicios o defectos de construcción debido a que el Consejo de Titulares había recibido un pago de su aseguradora privada para la reparación de algunas áreas del inmueble por las cuales se reclamaba indemnización en este pleito. En específico, arguyó que era de aplicabilidad la excepción a la doctrina de la fuente colateral por el pago del seguro por pérdida de la cosa.

Por su parte, el Peticionario se opuso y adujo que era inaplicable la excepción a la doctrina y que aún existía

---

[3]Surge del expediente que en el 2018 MAPFRE emitió ciertos cheques a favor del Consejo de Titulares en concepto de pagos por la reclamación. Véase, Apéndice de Certiorari, págs. 949-951. Véase, además el Sworn Proof of Loss, Apéndice de Certiorari, págs. 526-527 con fecha del 27 de noviembre de 2020.

controversia entre estos y su aseguradora con respecto a la cifra final a indemnizarse. El 23 de marzo de 2021, el foro primario dictó una <u>Resolución</u> para denegar la solicitud de sentencia sumaria parcial.

Luego de varios trámites procesales, el 6 de junio de 2022, los Recurridos presentaron una segunda solicitud de sentencia parcial con igual fundamento y añadieron que entre el Peticionario y MAPFRE se había materializado un contrato de transacción sobre la reclamación, por lo que estaba impedido de reclamarle a terceros por cualquier daño ya compensado. Alegaron que el pago recibido por la aseguradora era para reparar o reemplazar los daños de ciertos elementos comunes que, según la demanda, tenían vicios de construcción, por lo que, el Consejo de Titulares no podía acumular reclamaciones por el mismo perjuicio, a saber, el daño a la propiedad, y con ello recibir una compensación doble.[4] Como resultado, solicitaron que se desestimaran aquellas alegaciones relacionadas a las partidas ya indemnizadas por MAPFRE.

En respuesta, el Peticionario reiteró que era inaplicable la excepción a la doctrina de fuente colateral sobre seguros de cosas. Además, planteó que la compensación

---

[4]En específico, los Recurridos alegaron que MAPFRE indemnizó al Peticionario por el costo de reemplazar los extractores de aire, los extractores de humo, el sistema de impermeabilización del techo, el atrio, la pintura exterior, entre otros, y alegaron que la mayoría de esas reparaciones ya se habían realizado.

por parte de MAPFRE no era por los mismos daños ocasionados por los Recurridos, ni por el mismo evento dañoso. A su vez, señaló que la demanda incluía gastos y daños causados por los Recurridos que tuvieron que ser mitigados oportunamente.

El 7 de septiembre de 2022, doce (12) días antes de iniciar el juicio en su fondo, el foro primario dictó una Sentencia Sumaria Parcial para desestimar las alegaciones sobre deficiencias de los elementos comunes por los cuales el Consejo de Titulares había sido indemnizado por su aseguradora.[5] Determinó que el pago por los daños causados por el huracán María constituyó un seguro de cosas para reparar los daños a la propiedad y que, al extinguirse con ello su causa de acción, el Consejo de Titulares estaba imposibilitado de recibir una indemnización adicional. De esta forma, resolvió que, al aplicar la doctrina de fuente colateral, la acción por vicios de construcción y el reclamo a la aseguradora tenían el mismo propósito de procurar la reparación del inmueble.

Inconforme, el Peticionario presentó un recurso de apelación ante el Tribunal de Apelaciones. El 22 de

---

[5]Surge de los autos que, el 9 de septiembre de 2022, el Consejo de Titulares presentó ante el foro de primera instancia una Moción urgente y consentida en solicitud de suspensión de los procedimientos para que se dejaran sin efecto las fechas señaladas para el juicio en su fondo con el fin de una apelación de la Sentencia sumaria parcial, la cual fue declarada ha lugar.

septiembre de 2023, el foro apelativo intermedio dictó una Sentencia en la cual modificó el dictamen del foro primario a los fines de darse por satisfechas las reparaciones in natura, pero no los daños morales y patrimoniales y los gastos incurridos para mitigar los daños. Expresó que las partidas compensadas por la aseguradora fueron para ciertos elementos comunes y que, de probarse la existencia de los alegados vicios de construcción, no se justificaba recibir una doble compensación.[6]

Insatisfecho, el Consejo de Titulares recurre ante nos y en su Petición de Certiorari nos plantea los errores siguientes:

> Primer Error: Erró el TA al considerar la doctrina de fuente colateral y determinar que "las partidas pagadas por MAPFRE constituyen elementos físicos asegurados e indemnizados, por lo que no se justifica una doble compensación" ignorando así que se trata de dos perjuicios distintos y la marcada diferencia entre el origen y la causa del pago colateral de MAPFRE bajo una póliza de seguros por daños ocasionados por el huracán María vis a vis el origen y causa de la reclamación de epígrafe por defectos o vicios de construcción.

> Segundo error: Erró al no aplicar la doctrina de fuente colateral, sino su excepción, a casos de vicios de construcción y concluir que los recurridos tiene derecho a reducir su responsabilidad por el importe del pago que la

---

[6]En específico, el Tribunal de Apelaciones excluyó cualquier posible compensación por la manufactura, remoción e instalación de la claraboya ("skylight"), los extractores de aire y humo, la impermeabilización del techo, el empañetado de las paredes exteriores y parapetos, el remplazo de drenajes pluviales en la azotea, la reparación de grietas y el empañetado del edificio de estacionamiento.

Peticionaria recibió por una reclamación bajo una póliza de seguro contra la propiedad.

Tercer error: Erró al concluir que los pagos recibidos de MAPFRE indemnizan los daños causados por los recurridos y así dar por satisfecho el pago de las reparaciones in natura, dado que el pago de MAPFRE es hecho por un tercero no relacionado a los defectos o vicios de construcción, que no repara ni indemniza los daños causados por los Recurridos, los cuales van más allá de la sustitución o reparación de ciertos elementos comunes del Condominio Millenium.

En su Oposición petición de certiorari, los Recurridos reiteran que el Consejo de Titulares ya fue indemnizado por MAPFRE por el mismo concepto y naturaleza de daños en el inmueble, por lo que no pueden aspirar a una segunda indemnización por daños inexistentes. Aducen que la causa de acción por los alegados vicios de construcción se extinguió con la compensación de la aseguradora y que concederla en este pleito conllevaría un enriquecimiento injusto.

Evaluados los argumentos de ambas partes y expedido el recurso de certiorari, procedemos a resolver el asunto, no sin antes repasar el Derecho aplicable que rige esta controversia.

**II**

**A.**

El Artículo 1483 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. ant. 4124, establece la responsabilidad del contratista y del arquitecto por los vicios de construcción que provoquen la ruina de un edificio. Muñoz

v. Ten General, 167 DPR 297, 303 (2006); Pacheco v. Estancias, 160 DPR 409 (2003); Rivera v. A & C Development Corp., 144 DPR 450 (1997); Constructora Bauzá, Inc. v. García López, 129 DPR 579 (1991).[7] En específico que

> [e]l contratista de un edificio que se arruinase por vicios de construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez (10 años), contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirige, si se debe la ruina a vicios del suelo o de la dirección.
>
> Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince (15) años.[8] Íd.

La responsabilidad que emana de la primera parte de este artículo se denomina comúnmente como "responsabilidad decenal" en atención al plazo dispuesto en su primer párrafo. Véase, Rivera v. Las Vegas Dev. Co. Inc., 107 DPR 384 (1978). Esta protección a favor de los adquirentes de viviendas tiene el propósito de indemnizar los daños y

---

[7]El promotor del proyecto también podría ser responsable. Véase, Acevedo Hernández v. Viñas Sorbá, 111 DPR 633, 636 (1981). Véase, 31 LPRA sec. 10806(f).

[8]Se clarifica que el derogado Código Civil de Puerto Rico de 1930 (Código Civil de 1930) es el aplicable a la controversia de autos, puesto que los hechos se suscitaron durante su vigencia. Por ello, haremos referencia a este y a su jurisprudencia interpretativa. Para los Artículos similares en el Código Civil de 2020, véanse Artículos 1375 y 1541, 31 LPRA secs. 10272(i) y 10806(f). Véanse además la Ley Núm. 130 de 1967, conocida como Ley de la Oficina del Oficial de Construcción adscrita al Departamento de Asuntos del Consumidor; Reglamento para regular las distintas actividades que se llevan a cabo en el negocio de la construcción de viviendas privadas en Puerto Rico, Reglamento Núm. 2268 del Departamento de Asuntos del Consumidor del 17 de agosto de 1977.

perjuicios que los defectos o vicios de construcción hayan ocasionado. Constructora Bauzá, Inc. v. García López, supra, pág. 595; Pereira v. J.B.E.C., 95 DPR 82 (1967). Sin embargo, para que aplique dicho plazo de garantía es necesario que el vicio de construcción sea de tal magnitud que pueda considerarse un defecto "arruinante". Muñoz v. Ten General, supra, pág. 303.

Para que un defecto se considere arruinante no es necesario que se comprometa la solidez o la estabilidad de la estructura. Rivera v. A.C. Development Co., supra. No obstante, es necesario que el defecto sea de tal magnitud que afecte severamente el uso y disfrute del edificio. Muñoz v. Ten General, supra, pág. 303; Maldonado v. Las Vegas Development, 111 DPR 573, 574-575 (1981). Ante ello, hemos identificado cuatro (4) tipos distintos de ruina que puede sufrir un edificio, siendo estas: ruina total, ruina parcial, amenaza de ruina y ruina funcional. Véanse, Pacheco v. Estancias, supra, pág. 420; Rivera v. A & C Development Corp., supra; Fantauzzi v. Pleasant Homes, Inc., 113 DPR 132 (1982); Maldonado Pérez v. Las Vegas Dev., supra, págs. 574-575.[9]

Ahora bien, una vez el dueño del edificio presenta prueba que demuestra que los vicios de construcción que

---

[9]Cada una de estas cuatro (4) categorías entrañan sus características propias. Véanse, Rivera v. A.C. Development Co., 144 DPR 450 (1997); Fantauzzi v. Pleasant Homes, Inc., 113 DPR 132 (1982).

sufre el edificio o la unidad provocan alguno de los distintos tipos de ruina antes enunciados, se activa una presunción de culpa en contra del contratista que tuvo a su cargo la construcción. Suárez v. Levitt Homes, 167 DPR 526, 528 (2006); Pacheco v. Estancias, supra, pág. 421; Rivera v. A & C Development Corp., supra; Roselló Cruz v. García, 116 DPR 511 (1985). Desde ese momento, le corresponde entonces al contratista presentar prueba que demuestre una de dos circunstancias: (1) que el edificio o la unidad no está arruinada, o (2) que la ruina no se debió a su negligencia. Suárez v. Levitt Homes, supra, págs. 528-529; Pacheco v. Estancias, supra, pág. 420.

Como vemos, se trata de una presunción iuris tantum que tiene que ser rebatida por la parte contra la cual opera, es decir, el contratista y/o arquitecto. Íd., pág. 421. Nos comenta el Profesor Cabán Vales que serán estos los que tendrán que evidenciar específicamente que la ruina no se debió a su culpa, que actuaron dentro de las normas de la buena práctica de sus atribuciones profesionales o demostrar que la ruina se produjo por un caso fortuito o fuerza mayor. P. J. Cabán Vales, La Responsabilidad por vicios de construcción en España y Puerto Rico, Ed. Dykinson, Madrid, 2013, pág. 114. Por ello, si no se presenta prueba que rebata el hecho básico que da lugar a la presunción, el juzgador de hechos estará obligado a dar por probado el hecho presumido. Regla 302 de Evidencia de

Puerto Rico, 32 LPRA Ap. VI; Pacheco v. Estancias, supra, pág. 421.

Esta presunción se basa en el interés público que inspira la norma del precitado Artículo 1483 y en la dificultad que tendría el perjudicado si tuviese que probar la culpa del autor del daño. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 DPR 714, 728 (1986). Por esta razón, hemos expresado que es a los constructores de hogares a quienes les corresponde cumplir con los parámetros de calidad necesarios y asegurarse que las viviendas que construyen, como un negocio lucrativo, puedan ser disfrutadas plenamente por los consumidores que las adquieren. Pacheco v. Estancias, supra, pág. 425.[10]

Finalmente, como vimos, la segunda parte del Artículo 1483 dispone que si la causa de la ruina fuera la falta del contratista a las condiciones del contrato, la acción de indemnización se extendería a quince (15) años. Artículo 1483 del Código Civil de 1930, supra. Esta disposición extiende más allá del plazo decenal el término para reclamar contra los contratistas por aquellos vicios de construcción

---

[10]Véase, además, F. Arnau Moya, Los vicios de la construcción, su régimen en el código civil y en la ley de ordenación de la edificación, Tirant Lo Blanch, Valencia, 2004, págs. 23-24 ("Se dice que la responsabilidad por ruina tiene su fundamento en el interés público, ya que a la comunidad le interesa que las edificaciones destinadas a tener una duración prolongada estén construidas con arreglo a las reglas de la técnica. La seguridad pública está interesada en evitar construcciones viciosas cuya ruina pueda afectar a los derechos e intereses de tercero"). Id., (citas omitidas).

que tenga la estructura, siempre que estos sean producto de una violación contractual. Pacheco v. Estancias, supra, pág. 427; Zayas v. Levitt & Sons of P.R., Inc., 132 DPR 101 (1992); Federal Ins. Co. v. Dresser Ind., Inc., supra, 111 DPR 96 (1981).

**B.**

En nuestro ordenamiento hemos adoptado la doctrina de la fuente colateral, conforme a la cual, como regla general, el causante de un daño está impedido de deducir del importe de la indemnización que se le ha impuesto la compensación o beneficios que el perjudicado haya recibido de una tercera persona o entidad, entiéndase, **de una fuente no relacionada con el demandado o causante del daño**. (Negrillas suplidas). Silva Soto v. Suiza Dairy Corporation, 211 DPR 203 (2023); Nieves Cruz v. U.P.R., 151 DPR 150, 164-165 (2000); Futurama Import Corp. v. Trans Caribbean, 104 DPR 609, 611-612 (1976). La doctrina se fundamenta en el principio de que quien causa un daño por su negligencia no debe beneficiarse de lo que el perjudicado haya recibido por la liberalidad de otros, ni de los servicios públicos que la comunidad extiende a los necesitados. Nieves Cruz v. U.P.R., supra, pág. 165 citando a H.M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Publicaciones J.T.S. 1980, pág. 449.

Esta concepción se fundamenta además en que la relación del tercero que concede beneficios al perjudicado es

completamente distinta a la que tiene con este el causante de sus daños. Nieves Cruz v. U.P.R., supra, pág. 165. En ese sentido, el que ocasiona el daño está obligado a indemnizar, mientras que lo concedido por el tercero está abonado por otro título. Íd., citando a Santos Briz, La Responsabilidad Civil, Madrid, 1993, págs. 275-276; Puig Brutau, Fundamentos de Derecho Civil, Barcelona, 1983, Tomo II, Vol. III, pág. 198; Mazeaud, Derecho Civil, 1960, Parte II, págs. 62-63. De esta forma, la doctrina es una excepción a la norma general de que los daños deben ser de carácter compensatorio solamente. Silva Soto v. Suiza Dairy Corporation, supra (cita omitida).

Ahora bien, y en lo aquí pertinente, en Futurama Import Corp. v. Trans Caribbean, supra, pág. 614, clarificamos que la doctrina de la fuente colateral no debe aplicarse automáticamente. Véase además, Silva Soto v. Suiza Dairy Corporation, supra; Santiago Ortiz v. Real Legacy et al., 206 DPR 194, 217, esc. 50 (2021); Nieves Cruz v. U.P.R., supra, pág. 165.

En específico, preocupados por el problema de la llamada doble compensación o la acumulación de las indemnizaciones por el mismo perjuicio, señalamos que en cada caso se deben identificar "**sus circunstancias peculiares, y de acuerdo a la naturaleza del daño sufrido y el examen del origen y propósito o razón de ser del beneficio colateral de que se trate, determinar la**

**improcedencia o la justificación de la acumulación de las compensaciones**". (Negrillas suplidas) <u>Futurama Import Corp. v. Trans Caribbean</u>, supra, págs. 613-614. Véase, <u>Nieves Cruz v. U.P.R.</u>, supra, págs. 165-166. Por ello, señalamos que resultaba incorrecto analizar el ámbito o la frontera de la doctrina mediante una regla de sencilla aplicación. <u>Futurama Import Corp. v. Trans Caribbean</u>, supra, pág. 614 (citas omitidas).

### C.

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una solución justa, rápida y económica de todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. Cónsono con ello, la sentencia sumaria es el mecanismo procesal adecuado para resolver casos en los que no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); <u>Lugo Montalvo v. Sol Meliá Vacation</u>, 194 DPR 209, 225 (2015); <u>Córdova Dexter v. Sucn. Ferraiuoli</u>, 182 DPR 541, 555-556 (2011).

Así, a la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra

evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, supra.

Se considera un hecho material o esencial "aquel que pueda afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Como resultado, solamente se dictará sentencia sumaria en aquellos casos en los cuales el tribunal tenga ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, supra, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 168 (2011).

Una vez se presenta la solicitud de sentencia sumaria y su respectiva oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar

si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010). Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal debe determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983).

Ahora bien, este Tribunal ha pautado que el foro apelativo intermedio se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. Meléndez González et al. v. M. Cuebas, 193 DPR 100, 118 (2015); Vera v. Dr. Bravo, 161 DPR 308, 334 (2004). Por ello, reconocimos que de encontrar que los hechos materiales realmente son incontrovertidos, procede revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., pág. 119.

### III

En esencia, el Consejo de Titulares sostiene que los foros recurridos erraron al aplicar la excepción a la doctrina de fuente colateral y determinar que las partidas pagadas por MAPFRE por la reclamación de daños causados al inmueble por el huracán María tenían el mismo origen y causa que la reclamación de epígrafe por vicios de construcción.

En particular, arguye que fue incorrecto determinar que los Recurridos tenían derecho a reducir de su responsabilidad como contratistas y arquitectos tal pago, el cual fue emitido por un tercero no relacionado a los Recurridos y que no indemniza los daños causados por estos, los cuales van más allá de la reparación de ciertos elementos comunes.[11] Adelantamos que se cometieron estos errores.

Como punto de partida, destacamos que no está en controversia el que, mientras estaba pendiente ante el foro primario la demanda de daños por vicios de construcción, el Consejo de Titulares presentó una reclamación independiente contra su aseguradora MAPFRE por los daños que el huracán María les causó, la cual culminó extrajudicialmente con el pago de una indemnización. Los Recurridos sostienen que ello activa la excepción a la doctrina de fuente colateral y que, en consecuencia, procede que se eliminen de la demanda de autos las reclamaciones por vicios de construcción de aquellos elementos comunes que fueron compensados.

Debemos puntualizar que, si bien contamos con amplia jurisprudencia en materia de daños e incumplimiento contractual por vicios o defectos de construcción[12], según

---

[11]Por estar estrechamente relacionados, atenderemos los tres (3) señalamientos de error en conjunto.

[12]Véanse, por ejemplo, Muñoz v. Ten General, 167 DPR 297 (2006); Pacheco v. Estancias, supra; Zayas v. Levitt & Son of P.R., Inc., 132 DPR 101 (1992); Bartolomei v.

adelantamos, la controversia ante nos presenta por primera vez la oportunidad de evaluar el alcance de la doctrina de fuente colateral en pleitos de este tipo. Contrario a la contención de los Recurridos, el caso de autos se distingue a sobremanera de los hechos y nuestras expresiones en Futurama Import Corp. v. Trans Caribbean, supra. Esto último es lo que fundamenta nuestra determinación. Veamos.

Según se reseñó, como regla general, la doctrina de fuente colateral le prohíbe al causante de un daño deducir del importe de la indemnización que se le impone la compensación o beneficios que el perjudicado haya recibido de una tercera persona o entidad no relacionada con el demandado. Silva Soto v. Suiza Dairy Corporation, supra; Nieves Cruz v. U.P.R., supra; Futurama Import Corp. v. Trans Caribbean, supra. Debido al riesgo de una doble compensación, hemos establecido que, para determinar la improcedencia o la justificación de la acumulación de las indemnizaciones, se deben identificar en cada caso sus circunstancias peculiares según la naturaleza del daño y examinar el origen y el propósito del beneficio colateral. Silva Soto v. Suiza Dairy Corporation, supra; Futurama Import Corp. v. Trans Caribbean, supra, pág. 614.

---

Tribunal Superior, 98 DPR 495 (1970); González v. Agostini, 79 DPR 510 (1956), entre otros.

En cuanto a este análisis, según lo explica con más detalle el Juez Presidente Trías Monge en su Opinión concurrente en Futurama Import Corp.:

> Deben identificarse en consecuencia, como acertadamente se observa en la opinión per curiam, las **circunstancias específicas de cada caso y examinar en tal contexto factores tales como el origen, la naturaleza y el propósito del beneficio adicional envuelto; los objetivos básicos del sistema de daños y el rol del seguro en sí; la naturaleza del daño sufrido; si el beneficio adicional entraña un enriquecimiento injusto; si deriva, y hasta qué punto, de sacrificios pecuniarios del perjudicado; si el tercero benefactor puede o no subrogarse en los derechos del perjudicado contra el causante del daño; los costos sociales de una solución u otra; y el mejor modo, en suma, de conciliar los intereses envueltos en el caso concreto ante nos**. (Negrillas suplidas). Futurama Import Corp. v. Trans Caribbean, supra, págs. 616-617.

Ahora bien, y lo que es precisamente el objeto de controversia en este pleito, en Futurama Import Corp. expresamos que era necesario establecer una distinción entre los "seguros de cosas" y los seguros sobre la vida o contra accidentes susceptibles de ocurrirles a las personas, con el fin de determinar la aplicabilidad o no de la doctrina de fuente colateral. Futurama Import Corp. v. Trans Caribbean, supra, pág. 614.[13] En específico,

---

[13]Conviene recordar brevemente los hechos que allí consideramos: Futurama Import Corp. (Futurama) importó desde Italia un cargamento de ropa, la cual fue transportada hasta New York por la aerolínea Iberia. Al descargarse la mercancía para ser transportada por Trans Caribbean Airways (Trans Caribbean) a Puerto Rico, parte de la carga se dañó por haber estado expuesta a la lluvia. La firma importadora estimó el valor de la mercancía dañada en $5,565.60. La mercancía había sido asegurada en Italia, por lo cual

expresamos que tanto bajo la vertiente civilista de acumulación de indemnizaciones como en la doctrina angloamericana, era evidente que la cantidad adicional que se reclamaba no solo **tenía el mismo concepto y naturaleza que la cifra ya recibida de la compañía aseguradora**, sino que se fundamentaba en un seguro por pérdida de cosa, en el cual predomina el aspecto de indemnización. (Negrillas suplidas) Íd. En consecuencia, determinamos que Futurama Import Corp., había sido resarcida de esa parte de los daños y no debía aspirar a una indemnización adicional por los mismos. Íd.

Similarmente, en su Opinión concurrente, el Juez Presidente Trías Monge añadió que en dicho caso se trató de una actividad comercial, **donde la contratación del seguro se efectuó de manera rutinaria como parte de los costos de hacer negocio, lo que conllevó que no hubiese un verdadero sacrificio pecuniario del demandante debido a que el pago de la prima era inseparable de la actividad comercial**. (Negrillas suplidas) Íd., pág. 617. Por ello concluyó que la misión del seguro era claramente reparadora y que lo

---

Futurama fue compensada por la mitad de la pérdida. Futurama reclamó a Trans Caribbean la otra mitad, pero como esta última se negó a pagar, la demandó por la totalidad de la pérdida. En su Sentencia, el Tribunal de Primera Instancia restó de la cifra concedida los $2,782.80 que Futurama había recibido de la compañía de seguros italiana. En apelación, Futurama señaló que era de aplicación la doctrina de fuente colateral y que se le debía conceder la totalidad de la cifra.

único que se podía recobrar era la diferencia, si alguna, entre los daños sufridos y lo cobrado bajo el seguro.

Como resultado, desde Futurama Import Corp., este Tribunal resolvió que la doctrina de fuente colateral debe aplicarse a los casos de daños a las personas y descartó, como excepción, aplicarla en casos de daños materiales o, como allí se mencionó, de "seguro de cosas".[14] Ahora bien, y como médula de nuestra controversia actual, puntualizamos que esto último se resolvió en un pleito que entrañaba el reclamo de unos bienes muebles asegurados precisamente para cualquier eventualidad que surgiera durante el curso de la transacción asegurada. En otras palabras, el pago que realizó la aseguradora por los daños a los bienes materiales era un riesgo cubierto por la póliza de seguro suscrita como parte inseparable de la actividad comercial asegurada.

En ese sentido, lo resuelto en Futurama Import Corp., respecto al "seguro de cosas", no es extensivo a un pleito con reclamaciones **con causas de acción independientes**, como lo sería la responsabilidad decenal, y a raíz de circunstancias peculiares de daños distintos y remotos entre sí, como precisamente ocurre en el caso de autos. Entiéndase, en el pleito ante nos, la naturaleza de los daños reclamados en la Segunda demanda enmendada contra los

---

[14]Véase, Mariano Canales v. Pan American World Airways, Inc., 112 DPR 329 (1982), en donde se redujo de la sentencia original la suma cobrada por el demandante por su compañía de seguros por la pérdida de efectos personales que estaban en su maleta en un vuelo de Buenos Aires a San Juan.

aquí Recurridos son en virtud de la responsabilidad decenal de estos bajo el Artículo 1483 del Código Civil, supra, por los defectos y los vicios de construcción del Condominio Millenium, los cuales alegan que son del tipo de ruina funcional. Por otra parte, y contrario a lo aducido por los Recurridos, los daños resarcidos por la aseguradora MAPFRE al Consejo de Titulares fueron aquellos ocasionados por el paso del huracán María en un evento separado e independiente de la acción decenal de autos.

Como vimos, el contrato de seguros vigente entre el Consejo de Titulares y MAPFRE al momento en que ocurrió el paso del huracán María en el 2017 aseguró aquellos daños ocasionados por el evento atmosférico. Es decir, dicha póliza de seguro no era extensiva a los Recurridos por la culpa y/o negligencia que pudieran ser hallados por los presuntos vicios o defectos de construcción en virtud de una acción de responsabilidad decenal.

Adviértase que el Consejo de Titulares pagó una prima para adquirir esa póliza comercial de propiedad con MAPFRE, con el fin de asegurar los elementos comunes del Condominio Millenium contra cualquier riesgo según definido en la póliza, como lo fueron los vientos huracanados. De manera que, este beneficio colateral obedeció exclusivamente a los sacrificios pecuniarios del Peticionario y no tuvo el propósito de indemnizar, compensar o mitigar los vicios de construcción, si alguno, que tuviera la propiedad

asegurada. En consecuencia, aún de probarse en su día los alegados vicios presuntamente ocasionados por los Recurridos, el pago que realizó MAPFRE no representa una doble compensación indebida por dichas reclamaciones.

Por ello, resolvemos que se trata de indemnizaciones independientes por perjuicios distintos que no se relacionan al mismo evento. En específico, tanto el origen como la causa de la acción decenal y la de los daños a la propiedad en el 2017 por el huracán demuestran que son eventos separados entre sí, por incluso más de una década. Asimismo, el beneficio colateral que aquí se solicita deducir responde a circunstancias fortuitas que le son totalmente extrañas a los Recurridos. Es decir, no cabe considerar este beneficio para reducir la partida, si alguna, de los defectos de construcción en los elementos comunes y demás áreas, pues son de naturaleza distinta y, por ende, no los liberó de su responsabilidad civil bajo el Artículo 1483 del Código Civil, supra. Por el contrario, a distinto resultado hubiéramos llegado si el Consejo de Titulares hubiese recibido algún pago como asegurado mediante una póliza de seguro expedida precisamente para indemnizar daños afines a los vicios y/o defectos de construcción.

Por todo lo antes expuesto, resolvemos que erró el foro intermedio al aplicar la excepción a la doctrina de fuente colateral, debido a que el pago cubierto por la

póliza contra huracanes no repara, compensa ni indemniza de forma alguna al Peticionario de la posible ruina funcional del inmueble resultante de los vicios de construcción causados por los Recurridos bajo la acción decenal de autos. No tenemos duda que estos provinieron de una fuente colateral independiente y no relacionada con los Recurridos.

En particular, resolvemos que, al aplicar la doctrina de fuente colateral, los Recurridos están impedidos de reducir del importe de la indemnización a la que en su día sean responsabilizados por los vicios de construcción, las sumas recibidas por la aseguradora MAPFRE, por tratarse de una fuente colateral no relacionada a estos como presuntos causantes de los daños. Por lo tanto, no nos hallamos aquí ante la posibilidad de una doble compensación indebida y no procede la acumulación de indemnizaciones.

Resolver lo contrario permitiría que los presuntos causantes de la ruina potencial y funcional de un inmueble evadieran su responsabilidad civil como causantes de daños, al beneficiarse de un pago realizado por un tercero sin que dicho beneficio colateral guarde relación con los vicios o defectos de construcción. Asimismo, ello sería en detrimento de las consideraciones de interés público y de la política pública que permea nuestro ordenamiento bajo el Artículo 1483 del Código Civil, supra, y de nuestra jurisprudencia interpretativa, que procura la seguridad

pública, y que por ello regula la responsabilidad del contratista y del arquitecto de las obras de construcción.

**IV.**

Por todo lo anterior, se revoca la <u>Sentencia</u> del Tribunal de Apelaciones que, modificada, confirmó la <u>Sentencia Parcial</u> del Tribunal de Primera Instancia. En consecuencia, se deja sin efecto la desestimación de las alegaciones sobre las deficiencias y vicios de construcción de los elementos comunes y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma consecuente con lo aquí dispuesto.

Se dictará Sentencia de conformidad.


                                   Luis F. Estrella Martínez
                                        Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Consejo de Titulares del Condominio Millennium<br><br>Peticionarios<br><br>v.<br><br>Rocca Development Corp., et als.<br><br>Recurridos | CC-2023-0693 | Certiorari |

Sentencia

En San Juan, Puerto Rico, a 15 de enero de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la Sentencia del Tribunal de Apelaciones que, modificada, confirma la Sentencia Parcial del Tribunal de Primera Instancia. En consecuencia, se deja sin efecto la desestimación de las alegaciones sobre las deficiencias y vicios de construcción de los elementos comunes y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma consecuente con lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo concurre sin opinión escrita.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo