Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EUGENIA MARTÍNEZ MELÉNDEZ<br><br>Recurrida<br><br>v.<br><br>INSTITUTO MÉDICO DEL NORTE, INC. h/n/c HOSPITAL WILMA VÁZQUEZ Y OTROS<br><br>Peticionario | TA2025CE00236 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2023CV04156 (501)<br><br>Sobre: Despido Injustificado |
| --- | --- | --- |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de septiembre de 2025.

Comparece ante nos el Instituto Médico del Norte, Inc. h/n/c Hospital Wilma N. Vázquez, ("Hospital" o "Peticionario") mediante *Petición de Certiorari* presentado el 1 de agosto de 2025. Nos solicita la revocación de la *Resolución* emitida el 1 de julio de 2025, notificada el 2 de julio del mismo año, por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *No Ha Lugar* la sentencia sumaria instada por el Peticionario, la cual solicita la desestimación de la causa de acción sobre despido injustificado y discrimen en el empleo interpuesta por la señora Eugenia Martínez Meléndez ("señora Martínez Meléndez" o "Recurrida").

Por los fundamentos que expondremos a continuación, **denegamos** la expedición del auto de *certiorari*.

### I.

El 28 de julio de 2023, la señora Martínez Meléndez incoó una *Querella* sobre despido injustificado al amparo de la *Ley sobre*

*Despidos Injustificados,* Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.*, y bajo el procedimiento sumario instituido en la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.*, contra el Hospital.[1] En síntesis, alegó que comenzó a trabajar en el Hospital en agosto de 1986, hasta que fue despedida el 16 de junio de 2023. Sostuvo que su despido fue arbitrario, caprichoso e injustificado. En vista de lo anterior, señaló que tenía derecho a una mesada que ascendía a ciento trece mil ciento noventa y cuatro dólares con ochenta centavos ($113,194.80) por sus años de servicio y reclamó, además, el pago de honorarios de abogado.

En respuesta, el 11 de agosto de 2023, el Hospital presentó *Contestación a Querella*, en la que negó prácticamente todas las alegaciones contenidas en la querella.[2] Como defensa afirmativa, levantó que el despido estuvo justificado y que la Recurrida no tiene derecho a los remedios solicitados. Indicó que el despido se efectuó porque la señora Martínez Meléndez presentó información falsa en documentos oficiales, lo que provocó que el Hospital estuviera expuesto a reportajes noticiosos negativos y comentarios adversos en las redes sociales. Señaló que las acciones de la Recurrida alteraron el buen y normal funcionamiento de la empresa.

Subsiguientemente, el 24 de abril de 2024, la Recurrida presentó *Querella Enmendada.*[3] Por virtud de esta, incorporó una causa de acción al amparo de *Ley contra el Discrimen en el Empleo*, Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 LPRA sec. 146 *et seq.,* ("Ley Núm. 100"). Como corolario de lo

---

[1] Véase, SUMAC TPI, Entrada 1. **Es meritorio destacar que por virtud de la *Orden* emitida el 7 de mayo de 2024, notificada al próximo día, el presente pleito se convirtió en uno ordinario.** Véase SUMAC TPI, Entrada 47.

[2] Véase, SUMAC TPI, Entrada 6.

[3] Véase, SUMAC TPI, Entrada 34.

anterior, la señora Martínez Meléndez señaló que por los daños emocionales, físicos y morales sufridos a raíz de los actos discriminatorios por parte del Peticionario, reclamó los salarios dejados de percibir, la reinstalación en su empleo y una suma no menor de quinientos mil dólares ($500,000.00), así como el pago de los honorarios de abogados.

Por su parte, el 20 de mayo de 2024, el Hospital presentó *Contestación a la Demanda Enmendada*.[4] Mediante está negó ciertas alegaciones, levantó sus correspondientes defensas afirmativas y esgrimió que no incurrió en discrimen por razón de edad, ni por cualquier otra razón protegida en ley.

Posteriormente, el 22 de enero de 2025, la Recurrida presentó *Tercera Querella Enmendada*.[5] Mediante esta, acumuló como parte en el presente pleito a Chubb Insurance ("Chubb") por esta ser la aseguradora del Hospital al momento de los hechos que motivaron la presente controversia. En respuesta, el 3 de febrero de 2025, el Hospital presentó *Contestación A Tercera Querella Enmendada,*[6] mediante la cual volvió a negar la mayoría de las alegaciones y, de igual forma, esbozó sus defensas afirmativas. De la misma forma, el 5 de febrero de 2025, Chubb presentó *Contestación* [sic] *a Tercera Querella Enmendada (SUMAC 80).*[7] Por virtud de este escrito, negó ciertas alegaciones, esgrimió sus defensas afirmativas y negó que la póliza expedida por esta aseguradora cubriera la reclamación de la Recurrida.

Tras varios asuntos procesales que no son necesarios detallar, el 27 de mayo de 2025, el Hospital presentó *Moción de Sentencia Sumaria*.[8] Mediante este escrito, el Peticionario argumentó que en la presente controversia existían hechos

---

[4] Véase, SUMAC TPI, Entrada 48.
[5] Véase, SUMAC TPI, Entrada 80.
[6] Véase, SUMAC TPI, Entrada 82.
[7] Véase, SUMAC TPI, Entrada 84.
[8] Véase, SUMAC TPI, Entrada 100.

materiales que no se encontraban en controversia, y que demostraban que la decisión de despedir a la señora Martínez Meléndez respondía únicamente a sus propios actos. Especificó que, durante un proceso investigativo llevado a cabo por el Hospital, motivado por unas quejas provenientes de los familiares de un paciente, salió a relucir que la señora Martínez Meléndez incumplió con sus funciones, brindó información falsa durante la investigación, sometió información falsa en documentos oficiales del Hospital a sabiendas y omitió brindar información que le fue solicitada durante la investigación en curso. Como corolario de lo anterior, el Hospital esbozó lo siguiente:

> El primer error de Martínez-Meléndez fue hacer caso omiso a sus responsabilidades y dejar de visitar la habitación 214. No obstante, ello no fue la gota que colmó la copa de su justificado despido. Martínez-Meléndez optó por mentir, en primera instancia, de forma verbal durante la reunión del 8 de junio del 2023, al alegar haber entrado a la habitación el 6 y 7 de junio del 2023. Luego, al solicitar tiempo adicional para someter las hojas de evaluación de servicio al paciente, la demandante decidió documentar sus mentiras en un documento oficial al fabricar alegadas quejas que la paciente o familiares de la paciente presentaron durante dos (2) visitas que la demandante sabe que nunca realizó. Como si lo anterior no fuera poco, Martínez-Meléndez decidió cerrar sus faltas con convenientemente omitir que justo antes de entrar a la reunión del 8 de junio del 2023, visitó la habitación 214.[9]

Ante este cuadro, el Hospital razonó que conforme lo anterior, procedía dictar sentencia sumaria y, en consecuencia, desestimar con perjuicio las reclamaciones instadas por la Recurrida contra el Hospital.

Por su lado, el 28 de mayo de 2025, Chubb presentó *Moción Uniendonos* [sic] *a Solicitud de Sentencia Sumaria.*[10] En esencia, adujo que por entender que los argumentos elaborados por el Hospital en su moción de sentencia sumaria eran correctos, esta parte se unía a dicha moción. Por su lado, el 16 de junio de 2025,

---

[9] Véase, SUMAC TPI, Entrada 100, pág. 25.
[10] Véase, SUMAC TPI, Entrada 101.

la Recurrida presentó *Oposición a "Moción De Sentencia Sumaria"*.[11] En esta, esgrimió que el Hospital no logró demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que permitiera dictar sentencia sumaria a su favor.

Evaluada las posturas de las partes, el 1 de julio de 2025, notificada al día siguiente, el foro primario dictó *Resolución*.[12] Por virtud de esta, formuló las siguientes determinaciones de hechos no controvertidos:

1) El 10 de junio del 2013, Martínez-Meléndez fue nombrada Directora del Departamento de Servicio al Cliente, puesto que ocupó hasta el momento de su despido.

2) Como Directora del Departamento de Servicio al Cliente, Martínez-Meléndez registraba su hora de entrada y salida al Hospital.

3) El Ingeniero José Orlando Pabón era el supervisor directo de Martínez-Meléndez cuando éste fue nombrada Directora de Servicio al Cliente.

4) Durante los años 2018 al 2022, el Administrador del Hospital y supervisor directo de Martínez-Meléndez era el licenciado Ramón J. Vilar Rovira.

5) A partir del 1 de enero del 2023, el Lcdo. José Talavera, Administrador del Hospital, fue el supervisor directo de Martínez-Meléndez.

6) Paciente N.C.S. se internó en la habitación 214 del Hospital el 29 de mayo del 2023.

7) El 8 de junio del 2023, Martínez-Meléndez llegó al Hospital a las 6:43 a.m.

8) A las 6:53 a.m., Martínez-Meléndez se dirigió a la habitación 214 donde se encontraba la paciente N.C.S. y permaneció dentro de esa habitación por aproximadamente veinte (20) minutos.

9) Presentes en la reunión se encontraban el Lcdo. Talavera, Enrique Mederos, Jenny Gómez, Damaris Ríos, Joseline Ríos, Verónica Otero, y Martínez-Meléndez.

10) Martínez-Meléndez alega que tomó conocimiento de que la reunión trataba del paciente N.C.S. cuando entra a la reunión y escucha que estaban discutiendo a la paciente y comenzó a tratar de recordar las fechas en las cuales había visitado la habitación 214, donde se localizaba dicha paciente.

11) Martínez-Meléndez comenzó a escribir en una de las hojas de evaluación de servicio fechas para tratar de acordarse de las fechas en que visitó a la paciente N.C.S.

12) En la reunión del 8 de junio del 2023, el Lcdo. Talavera le preguntó a Martínez Meléndez si había intervenido con la paciente N.C.S.

---

[11] Véase, SUMAC TPI, Entrada 104.
[12] Véase, SUMAC TPI, Entrada 111.

13) Martínez-Meléndez no tenía las hojas de evaluación posteriores al 31 de mayo de 2023 en la reunión porque tenía que pasarlas a computadora y las entregó después de la reunión.

14) Según el registro de ponches de la señora Martínez-Meléndez, ésta no se presentó a trabajar el 5 de junio del 2023 por razón de enfermedad.

15) Según el registro de ponches de la señora Martínez-Meléndez, ésta se presentó a trabajar el 6 de junio del 2023 de 10:13 a.m. a 5:27 a.m.

16) Según el registro de ponches de la señora Martínez-Meléndez, ésta se presentó a trabajar el 7 de junio del 2023, de 10:49 a.m. a 5:00 p.m.

17) Según el registro de ponches de la señora Martínez-Meléndez, ésta se presentó a trabajar el 8 de junio del 2023, a las 6:43 a.m. hasta las 4:09 p.m.

18) El 16 de junio del 2023 Martínez-Meléndez fue despedida del Hospital.

19) A Martínez-Meléndez se le notificó su despido mediante carta entregada por Marie Luz Rivera Centeno, Directora de Recursos Humanos, y Martínez-Meléndez se rehusó firmarla, pero sí la firmaron Rivera-Centeno, Arlene Díaz Báez, Staff Development Coordinator, y Jesús Méndez, Supervisor de Seguridad.

20) Chubb emitió a favor del Instituto Médico del Norte, Inc. h/n/c Hospital Wilma N. Vázquez la Póliza Número DO3823 titulada "Management Protection Insurance Policy", para el Periodo de Póliza del 12 de diciembre de 2022 al 12 de diciembre de 2023, la cual incluye una cubierta de "Directors and Officers Liability Coverage Part" (D&O) y una cubierta de "Employment Practices Liability Coverage Part" (EPL), las cuales están sujetas a sus términos, condiciones, limitaciones, exclusiones y endosos.

21) La cubierta EPL bajo la Póliza DO3823 tiene un límite de responsabilidad sencillo y agregado máximo de un millón de dólares ($1,000,000.00), sujeto a un retenido autoasegurado de sesenta mil dólares ($60,000.00), y sujeto a lo dispuesto en sus demás términos, condiciones, exclusiones y endosos.[13]

Cónsono con estas determinaciones de hechos, el foro primario resolvió que tenía dudas sobre varios hechos materiales en el presente caso. Especificó que "[e]ntre esto, lo más básico, si mintió o no durante la investigación, si procedía una amonestación en vez de el [sic] despido, si la alegada investigación arrojó suficientes razones para un despedido justificado, entre otros factores".[14] Por tanto, el foro *a quo* declaró *No Ha Lugar* la *Solicitud de Sentencia Sumaria* presentada por el Hospital.

---

[13] Véase, SUMAC TPI, Entrada 111, págs. 2-3.
[14] Véase, SUMAC TPI, Entrada 111, pág. 12.

Inconforme, el 1 de agosto de 2025, el Hospital presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> Erró el TPI al no determinar que estaban incontrovertidos los hechos materiales que la recurrida admitió en su oposición.

> Erró el TPI al no determinar que estaban incontrovertidos los hechos que la recurrida no logró controvertir según requieren la [sic] reglas de procedimiento civil.

> Erró el TPI y abusó de su discreción al denegar la MSS y no dar deferencia a la investigación interna ni a la adjudicación de credibilidad realizada por el hospital, a pesar de que el proceso de investigación no fue impugnado de forma alguna por la recurrida ni existe evidencia de perjuicio, irrazonabilidad o arbitrariedad en el proceso que justifique inmiscuirse con la prerrogativa gerencial en este caso.

> Erró el TPI y abusó de su discreción al no desestimar reclamaciones de discrimen que están prescritas por haber ocurridos hace más de diez (10) años.

El 20 de agosto de 2025, esta Curia emitió *Resolución* en la cual se le concedió un término de diez (10) días a la parte Recurrida para que mostrara causa por la cual no debíamos expedir el auto de *certiorari*. Oportunamente, el 26 de agosto de 2025, la Recurrida compareció mediante *Memorando en Oposición a la Expedición del Auto de Certiorari*. Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

**II.**

**A. *Certiorari***

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *Rivera et al. v. Arcos*

*Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari. Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra,* págs. 712-713. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Sentencia Sumaria

La sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Soto y otros v. Sky Caterers,* 215 DPR___ (2025), 2025 TSPR 3, pág. 10; Véase, además, *BPPR v. Cable Media,* 215 DPR___ (2025), 2025 TSPR 1. La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* No obstante, para que una sentencia sumaria proceda, es necesario que la prueba que acompaña la solicitud de sentencia sumaria debe surgir preponderantemente la inexistencia de controversia sobre los hechos medulares del caso. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros,* 216 DPR___ (2025), 2025 TSPR 78, pág. 9.

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria

debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. V. M. Cuebas*, 193 DPR 100 (2015), el Tribunal Supremo estableció "el estándar específico" que debe utilizar este Foro al "revisar denegatorias o concesiones de Mociones de Sentencia Sumaria". A esos efectos, el Tribunal dispuso que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra.* "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros*, 213 DPR 80, 91-92 (2023) citando a *Meléndez González et al. v. M. Cuebas, supra.*

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el

expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media,* supra*,* pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

Por otra parte, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Consejo Tit. v. Rocca Dev. Corp., et als.,* supra*,* 215 DPR___ (2025) 2025 TSPR 6, pág. 15. Por ende, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

Por su parte, la Regla 36.4 de Procedimiento Civil, *supra*, dispone que si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos. De la misma forma, el tribunal deberá establecer hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando así

que los procedimientos ulteriores sean justos en el pleito. *Íd.* A tono con lo anterior, la precitada regla establece que, al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. *Íd.*

### III.

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, resolvemos que tras realizar un examen *de novo* tanto de la moción de sentencia sumaria presentada por el Peticionario, la oposición a esta presentada por la Recurrida y los documentos anejados en ambos escritos, acogemos como correctos los hechos sobre los cuales el foro primario estableció que no hay controversia. Asimismo, resolvemos que ciertamente están en controversia los elementos subjetivos y de credibilidad señalados por el foro *a quo* en la *Resolución* recurrida.

En vista de lo anterior, determinamos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, el Peticionario no ha demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

Nuestra determinación de no intervenir en los méritos de la decisión recurrida en estos momentos no constituye una adjudicación de la controversia existente entre las partes ni prejuzga el asunto planteado por estas.

**IV.**

Por los fundamentos anteriormente expuestos, **denegamos** el recurso de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones