Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| COLEGIO MI CUIDO Y EDUCACIÓN, INC., ET ALS<br><br>Recurridos<br><br>v.<br><br>RAÚL ANTONIO ORTIZ DÁVILA, ET ALS<br><br>Peticionarios | TA2025CE00369 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2022CV00094 (208)<br><br>Sobre: Acción Reivindicatoria |

Panel integrado por su presidenta, la jueza Grana Martínez[1], la jueza Santiago Calderón y la jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de noviembre de 2025.

Comparece ante nos el señor Raúl Antonio Ortiz Dávila, la señora Elizabeth Gómez Acevedo y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, "matrimonio Ortiz-Gómez" o "Peticionarios") mediante *Petición de Certiorari* presentada el 28 de agosto de 2025. Nos solicita la revocación de la *Resolución* emitida el 15 de julio de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Humacao ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *No Ha Lugar* la moción de sentencia sumaria y solicitud de sentencia declaratoria presentada por los Peticionarios, en la cual solicitaron que el terreno en controversia es propiedad del matrimonio Ortiz-Gomez.

Por los fundamentos que expondremos a continuación, **denegamos** el presente recurso.

---

[1] Mediante Orden Administrativa OATA-2024-030 se designó a la Hon. Grace Grana Martínez en sustitución de la Hon. Olga E. Birriel Cardona, ya que ésta se acogió a los beneficios de retiro.

**I.**

Conforme surge del expediente, el 31 de enero de 2022, el Colegio Mi Cuido y Educación, Inc. ("Colegio") y la señora Irma I. Fontánez,[2] como Presidenta del Colegio, instaron *Demanda* sobre acción civil contra los Peticionarios y Desiderata Realty, LLC ("Desiderata").[3] Además, se incluyó a la Cooperativa de Ahorro y Crédito Las Piedras, como parte con interés.[4] En lo pertinente a la controversia ante nuestra consideración, el Colegio alegó que adquirió de Desiderata una propiedad mediante la Escritura Número Nueve (9), otorgada el 15 de junio de 2020 ante el notario Víctor Martínez Cruz. La aludida finca consta inscrita en el Folio 126, Tomo 54 del Registro de la Propiedad del municipio de Las Piedras.

Asimismo, surge de las alegaciones de la *Demanda*, que la propiedad perteneciente al matrimonio Ortiz-Gómez consta inscrita al Folio 225 del Tomo 61 del Registro de la Propiedad del municipio de Las Piedras.  De igual forma, el Colegio esbozó que su propiedad es la finca principal o matriz, la cual luego fue segregada en lotes, de los cuales uno de ellos constituye la finca adquirida por el matrimonio Ortiz-Gómez.

Del mismo modo, arguyó que una franja de la propiedad antes mencionada constituye el único acceso legal de la finca hacia la vía pública. Adujo que el matrimonio Ortiz-Gómez ha actuado como edificantes de mala fe y en ánimo de usurpar su propiedad. Ante este cuadro, explicó que incoó una acción de interdicto posesorio en el caso HU2020CV00690. No empece lo anterior, expresó que el foro primario determinó que la posesión que el

---

[2] Mediante *Sentencia Parcial* emitida el 18 de mayo de 2023, el foro primario declaró el desistimiento sin perjuicio de la reclamación por parte de la co demandante Irma I. Fontánez. Véase SUMAC TPI, Entrada 86.
[3] Véase SUMAC TPI, Entrada 1.
[4] Mediante *Sentencia* emitida el 19 de octubre de 2022, se desestimaron las causas de acción levantadas contra la Cooperativa de Ahorro y Crédito Las Piedras. Véase SUMAC TPI, Entrada 53.

matrimonio Ortiz-Gómez alegaba ostentar sobre la porción de terreno en controversia, había sido perturbada. Por tal razón, el Colegio instó la demanda que da inicio a este pleito, en la que invocó la protección registral, solicitó la reivindicación de la propiedad y una cantidad no menor de ciento cincuenta mil dólares ($150,000.00) por concepto de los daños ocasionados por haber edificado y construido en terreno ajeno. De otro lado, solicitó que se ordenara la demolición y remoción de toda obra o estructura realizada por estos, incluyendo los portones y verjas. También, solicitó indemnización por daños continuos los cuales estimó en no menos de un millón de dólares ($1,000,000.00).

En cuanto a las alegaciones contra Desiderata, el Colegio le imputó a esta parte el haber violentado la cláusula cuarta de la Escritura de Compraventa suscrita entre ellos, la cual disponía que *"aseguraba tener el suficiente título válido en derecho para vender dicha propiedad sin más cargas, gravámenes y/o limitaciones que las establecidas en la referida escritura"*.[5] Por tanto, argumentó que Desiderata incumplió con sus obligaciones como vendedor.

Posteriormente, el 18 de abril de 2022, el Colegio presentó *Demanda Enmendada* a los únicos fines de enmendar el epígrafe para que la Cooperativa de Ahorro y Crédito Las Piedras figurara como parte demandante.[6]

Transcurridos varios trámites procesales, el 1 de mayo de 2025, el Colegio presentó *Moción en Solicitud de Sentencia Sumaria*.[7] En esencia, esbozó que del expediente no se desprendía documento alguno que corroborara que los Peticionarios o sus antecesores en derecho mantuvieran la posesión física y civil de la

---

[5] Véase, inciso 85 de la *Demanda* en SUMAC TPI, Entrada 1.
[6] Entrada 21
[7] Véase SUMAC TPI, Entrada 374.

franja de terreno que está en controversia desde el 1962. Por tal razón, solicitaron los siguientes remedios:

a. Se dicte sentencia reivindicando la propiedad a favor del Colegio por ser estos los dueños titulares de la misma; y el cual constituye el acceso a la vía pública y se le conceda la indemnización solicitada según el informe pericial.

b. Cuantía que continuara aumentando hasta que el codemandado Esposos Ortiz-Gómez se mantengan ejerciendo la acción ilegal de ocupación sobre el predio del Colegio.

c. Se le ordene el desalojo de la propiedad a los codemandados inmediatamente se dicte sentencia para que, sin excusa o dilación, la misma sea devuelta y se ponga en posesión de al Colegio.

d. Que conceda el pago de costas y honorarios de abogado a favor del Colegio

e. Que la restitución y fijación de los puntos y deslindes sean a cargo exclusivamente del codemandado al este haber destruido haciendo desaparecer todo signo, monumento o punto al embrear y cercar el acceso de la finca del Colegio.[8]

Paralelamente, en igual fecha, los Peticionarios presentaron *Mocion* [sic] *de Setencia* [sic] *Sumaria; y Solicitud de Sentencia Declaratoria.*[9] Esbozaron que la franja de trece (13) metros que está en controversia forma parte del terreno perteneciente al matrimonio Ortiz Gómez. Agregaron que los dueños anteriores de la referida franja mantuvieron posesión pública, pacífica e ininterrumpida de la misma desde 1962 hasta el 8 de noviembre de 2008, fecha en la que el matrimonio Ortiz-Gómez la adquirió. Reiteraron que dicho predio no forma parte de la finca adquirida por el Colegio. Ante este cuadro, los Peticionarios esgrimieron que:

No existe controversia de hechos que desde 1962 dicho predio reclamado nunca ha servido en uso a la finca que hoy es del Colegio; el área en controversia siempre ha estado delimitado por verjas que lo separan de sus demás colindantes, según admitido bajo juramento por Desiderata y la Sra. Irma I. Fontanes. Hecho que evidente públicamente incluso a los funcionarios del Colegio por lo que no pueden alegar tercería registral por carecer del ingrediente indispensable "buena fe" y "falta de conocimiento".[10]

---

[8] *Íd.*
[9] Véase SUMAC TPI, Entrada 376.
[10] *Íd.*

Cónsono con lo anterior, argumentaron que procedía dictar sentencia sumaria, y en consecuencia desestimar la causa de acción instada por el Colegio. En armonía con lo antes expuesto, arguyeron que procedía declarar que toda el área en controversia formaba parte de la finca del matrimonio Ortiz-Gómez.

Así pues, el 20 de mayo de 2025, el Colegio presentó *Oposición a Solicitud de Sentencia Sumaria del Codemandado Esposos Ortiz-Gómez.*[11] En esencia, se opuso al argumento esbozado por el matrimonio Ortiz-Gómez, ya que estos nunca poseyeron la franja de terreno de trece (13) metros a partir del 2008 de manera pública, pacifica e interrumpidamente. Asimismo, destacó que los anteriores dueños tampoco mantuvieron posesión desde el 1962, tal y como lo plantean los Peticionarios.

Por su parte, el 22 de mayo de 2025, Desiderata presentó *Moción en Oposición a: "Moción de Sentencia Sumaria y Solicitud de Sentencia Declaratoria," Presentada a la Entrada SUMAC-377.*[12] Por virtud de este escrito, expuso que la moción de sentencia sumaria presentada por los Peticionarios no cumplía con la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, pues existía una clara controversia de hecho referente a que el matrimonio Ortiz-Gómez poseyera de manera ininterrumpida por sesenta (60) años el predio en controversia. Agregó que dicho hecho debía ser dilucidado en una vista en su fondo.

Por su lado, el 30 de mayo de 2025, los Peticionarios presentaron *Mocion* [sic] *Oposición* [sic] *a Sentencia* [sic] *Sumaria Presentada por el Colegio y Reiterando Solicitud de Sentencia Sumaria y Declaratoria.*[13] Esencialmente, se reafirmaron en su postura en torno a que "toda el área, incluyendo el área en controversia, ha sido una poseído [sic] en dominio de manera

---

[11] Véase SUMAC TPI, Entrada 402.
[12] Véase SUMAC TPI, Entrada 404.
[13] Véase SUMAC TPI, Entrada 408.

pública, pacífica, ininterrumpida y en carácter de dueño, con justo título adquirido a precio alzado y bajo las colindancias que siempre han sido las mismas que hoy existen hace más de sesenta años; posesión que ya fue adjudicada por sentencia judicial final y firme".[14] Por tal motivo, razonaron que la moción de sentencia sumaria presentada por el Colegio había quedado totalmente refutada.

De otra parte, el 5 de junio de 2025, los Peticionarios presentaron *Replica [sic] en oposición a escrito titulado "Mocion [sic] En Oposicion [sic] De Sentencia Sumaria y Solicitud de Sentencia Declaratoria SUMAC-377 Contenida A La Entrada 404 SUMAC*.[15] En esta, esgrimieron que tras demostrar la posesión real y en dominio de la propiedad en controversia, y al no estar dicha área dentro de las negociaciones cuando el Colegio la compró, adujeron que procedía dictar sentencia declaratoria en aras de establecer que el predio en cuestión le pertenece al matrimonio Ortiz-Gómez.

Así las cosas, el 15 de julio de 2025, notificado al día siguiente, el foro primario dictó *Resolución*.[16] Por virtud de esta, el foro *a quo* formuló las siguientes determinaciones de hechos incontrovertidas:

1. La demandante, Colegio Mi Cuido Y Educación, Inc. es una corporación doméstica debidamente autorizada a hacer negocios en el Estado Libre Asociado de Puerto Rico.

2. Los codemandados Raúl Ortiz Dávila, Elizabeth Gómez Acevedo son dueños en pleno dominio de una propiedad ubicada en la Carretera Estatal 198 al kilómetro 21 de Las Piedras, la cual figura inmatriculada al Registro de la Propiedad como la Finca 3258 inscrita al Folio 225 del Tomo 61 de Las Piedras, Puerto Rico.

3. La propiedad que pertenece hoy a los esposos Ortiz – Gómez perteneció en su origen a los progenitores del codemandado, Raúl Antonio Ortiz Dávila; quienes la adquirieron mediante escritura Seiscientos cuarenta y cuatro (644) de Compraventa otorgada el 23 de octubre de 1962 ante el Notario Jesús A. Cintrón Rivera.

4. Arecibo Development, adquirió la finca de 6.68 cuerdas de Masso & Contreras Inc., mediante Escritura Núm. 9

---

[14] Véase SUMAC TPI, Entrada 408, pág. 47.
[15] Véase SUMAC TPI, Entrada 412.
[16] Véase SUMAC TPI, Entrada 434.

sobre Compraventa otorgada el 14 de julio de 1997, en San Juan, Puerto Rico ante el notario Alberto Aresti Franceschini. Arecibo Development estuvo representada en dicho acto por su socio gestor Ing. Víctor Luciano Contreras Muñoz; mientras que Masso & Contreras compareció por conducto del Ing. Francisco Masso González.

5. Masso & Contreras adquiere la finca de 6.68 cuerdas de la Corporación Insular de Seguro mediante Escritura Núm. 11 otorgada el 27 de octubre de 1983 en San Juan, Puerto Rico ante el notario Rodolfo Sequeira sobre Compraventa y Constitución de Hipoteca. En dicho acto Masso & Contreras estuvo representada por su Presidente Francisco Masso González.

6. Previo a Masso & Contreras adquirir la finca de 6.68 cuerdas, ya en esta se había sometido un proyecto de lotificación ante la Junta de Planificación bajo el caso número 64-028 de Lotificación, Informe número 64-L 933, según escritura Núm. 259 del 29 de septiembre de 1965 sobre rectificación de cabida y compraventa.

7. Los codemandados esposos Ortiz-Gómez adquirieron el lote colindante de los padres del codemandado Ortiz Dávila mediante Escritura de Compraventa Número 57 del 8 de noviembre de 2008 ante el Notario Ferdinand Vargas Velázquez.

8. Antonio Ortiz Espinosa y su esposa Artemia Dávila Medina, antecesores de los codemandados Esposos Ortiz-Gómez, adquirieron el referido lote mediante la Escritura Núm. 644 sobre compraventa del 23 de octubre de 1962 otorgada en San Juan, Puerto Rico ante el notario Jesús A. Cintrón Rivera.

9. La descripción registral de la propiedad del codemandado, la cual se ha mantenido inalterada en cuanto cabida, dimensiones y colindancias hasta el presente, es la siguiente: "RÚSTICA: Parcela marcada en el Plano de Inscripción con el #4, compuesto de .257 de cuerda, en el Barrio Quebrada Arenas del término municipal de Las Piedras, Puerto Rico, equivalentes a 1,010.1128 metros cuadrados; que mide y colinda por el Norte, en 33.50 metros, con el resto de la finca principal; por el Sur, en 2 alineaciones, una de 18.00 metros y la otra de 15.00 metros, con una faja de terreno de la finca principal, dedicada a uso público, que la separa de la Carretera Estatal #30; por el Este, en 30.00 metros, con una calle en proyecto, de 13.00 metros de ancho, que forma parte de la finca principal; y por el Oeste, en 31.00 metros, con la parcela marcada en el Plano de Inscripción con el #5, que forma parte de la finca principal. Contiene una casa de una sola planta destinada a vivienda. Catastro Núm. 253-100-137-19-000."

10. El codemandado ha admitido que este nunca ha llevado un procedimiento de segregación, rectificación, deslinde y/o expediente de rectificación de cabida o expediente de dominio que altere o que enmiende la descripción conforme al Registro.[17]

Cónsono con estas determinaciones de hecho, el foro primario concluyó lo siguiente:

---

[17] *Íd.*

> [E]xisten varias controversias, a saber: si la franja de terreno objeto de la controversia es o no parte de la propiedad adquirida por el Colegio; si los demandados han estado en la posesión de la porción de terreno en cuestión de manera ininterrumpida por aproximadamente 60 años; si la propiedad fue delimitada por verjas desde el año 1962 y si la finca adquirida por el Colegio se encuentra o no enclavada. Corresponde, por tanto, ver el caso en los méritos para hacer una determinación con relación a los hechos alegados en la demanda por lo que no se puede disponer del caso mediante el proceso sumario. Es decir, existen en este caso cuestiones subjetivas y de credibilidad que deber ser dirimidas en un juicio ordinario. Al examinar una moción de sentencia sumaria, nuestro ordenamiento ha dispuesto que cuando existen elementos subjetivos, de intención, propósitos mentales, negligencia o cuando el factor de credibilidad es esencial no se debe utilizar la solicitud de sentencia sumaria. Es necesario que se celebre un juicio en su fondo. Así se impide que la parte demandante sea privada de su día en corte. En resumidas cuentas, no tenemos ante sí un cuadro fáctico completo y certero que nos permita disponer del caso de forma sumaria.[18]

Conforme al análisis previamente esbozado, el foro *a quo* declaró *No Ha Lugar* tanto la moción de sentencia sumaria y la solicitud de sentencia declaratoria interpuesta por los Peticionarios, como la moción de sentencia sumaria presentada por el Colegio.

En desacuerdo con el resultado, el 30 de julio de 2025, los Peticionarios presentaron *Mocion [sic] bajo la Regla 36.4 Y 47 de Procedimiento Civil.*[19] Mediante este escrito, esencialmente reiteraron su posición referente a los méritos de la sentencia sumaria presentada por éstos. Afirmaron que la finca adquirida por el Colegio colinda con otros predios pertenecientes al propio Colegio, o a su personal, por lo que dicho predio no estaba enclavado. A su vez, recalcaron su posición en cuanto a que, en el presente caso, se configuraron todos los elementos necesarios para declarar una usucapión ordinaria. Evaluado este escrito, el 30 de julio de 2025, el foro primario emitió *Orden* en la cual expresó "No Ha Lugar a lo solicitado".[20]

---

[18] *Íd.*
[19] Véase SUMAC TPI, Entrada 438.
[20] Véase SUMAC TPI, Entrada 439.

Aun inconformes, el 28 de agosto de 2025, los Peticionarios presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> Erró el TPI al denegar la solicitud de sentencia sumaria de los Esposos Ortiz-Gómez ignorando la abundante prueba directa, no refutada, que acreditó la posesión pública, pacífica, ininterrumpida y en concepto de dueño sobre el predio en controversia por más de 58 años.

> En la alternativa, erró el TPI cuando tampoco incorporó a sus determinaciones de hechos incontrovertidos los hechos materiales propuestos por los Esposos Ortiz-Gómez y respaldados por declaraciones juradas, documentos públicos y evidencia fotográfica, privando así de una adecuada delimitación de la controversia conforme a la regla 36.4 Código Civil actual donde se establece la existencia de un término prescriptivo de Diez (10) años según definido en el artículo 788 del nuevo Código Civil. Por lo que se reclama que el Honorable Tribunal declare y así se resuelva judicialmente, que la parte o predio en controversia es y forma parte y pertenece exclusivamente a los esposos Ortiz – Gómez, porque como fue realizado el negocio con el dueño original de la finca y luego con éstos, el predio en controversia fue parte de la negociación, se les representó que era parte de su lote y lo han conservado, pagando contribuciones por el; manteniendo su posesión dominio de manera pública, pacífica, en carácter de dueño, con justo título adquirido a precio alzado y bajo las colindancias que se le representaron que siempre han sido las mismas que hoy existen hace más de sesenta años; posesión que ya fue adjudicada por sentencia judicial final y firme por lo que solicitamos que se dicte sentencia resolviendo que el predio en controversia a quien le pertenece es a los esposos Ortiz – Gómez y asi [sic] reconsidere su Resolución y desestime le demanda. En igual fecha, el foro primario emitió Orden en la cual expresó No Ha Lugar a lo solicitado.

El 8 de septiembre de 2025, esta Curia emitió *Resolución* en la cual se le concedió un término de diez (10) días a la parte Recurrida para que mostrara causa por la cual no debíamos expedir el auto de *certiorari*. Oportunamente, el 18 de septiembre de 2025, la parte Recurrida compareció mediante escrito intitulado *Causales en Oposición a Expedición Auto Certiorari*. Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la

normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.

### *A. Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re*

*Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari. Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 712 (2019). No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Sentencia Sumaria

La sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Soto y otros v. Sky Caterers,* 215 DPR___ (2025), 2025 TSPR 3, pág. 10; Véase, además, *BPPR v. Cable Media,* 215 DPR___ (2025) 2025 TSPR 1. La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación

solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, surja de manera preponderante la inexistencia de controversia sobre los hechos medulares del caso. *Soto y otros v. Sky Caterers*, supra.

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. V. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo estableció el estándar específico que debe utilizar este Foro al revisar denegatorias o concesiones de Mociones de Sentencia Sumaria. A esos efectos, el Tribunal Supremo ha dispuesto que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679 (2018).

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra,* pág. 118. "[L]a revisión del foro apelativo conlleva examinar

*de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros*, 213 DPR 80, 91-92 (2023) citando a *Meléndez González et al. v. M. Cuebas*, *supra*.

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media,* supra*,* pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

Por otra parte, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Consejo Tit. v. Rocca Dev. Corp., et als.,* supra*,* 215 DPR___ (2025) 2025 TSPR 6, pág. 15. Por ende, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

**III.**

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de

los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, los Peticionarios no han demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constataron que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

Nuestra determinación de no intervenir en los méritos de la decisión recurrida en estos momentos no constituye una adjudicación de la controversia existente entre las partes ni prejuzga el asunto planteado por estas.

**IV.**

Por los fundamentos anteriormente expuestos, **denegamos** el recurso de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones