Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| ISLAND FINANCE, LLC<br><br>Apelada<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE SAN JUAN<br><br>Apelante | TA2025AP00512 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2022CV04087<br><br>Sobre: Patentes Municipales |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Jueza Lotti Rodríguez

Grana Martínez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 13 de enero de 2026.

La parte apelante compuesta por los Municipios Autónomos de Caguas y San Juan solicitan que revoquemos la Sentencia Sumaria en la que el Tribunal de Primera Instancia, declaró nulas las notificaciones de deficiencia en el pago de patentes municipales emitidas contra Island Finance, LLC. Por su parte, la apelada Island Finance, LLC, en adelante IFCLLC o la apelada, presentó su oposición al recurso. Estando en posición de resolver la controversia entre las partes, detallamos los hechos pertinentes que sustentan nuestra determinación.

### I

Island Finance, LLC, presentó pleitos separado contra ambos municipios, porque se negaban a honrar el Decreto de Exención Contributivo que el Departamento de Desarrollo Económico y Comercio emitió a su favor. Ambos pleitos se consolidaron. La apelada argumentó que los apelantes pretendían cobrar injustificadamente por los servicios que presta a favor de Island Finance Borrower. Su representación legal adujo que la apelada vende a Island Finance Borrower los préstamos que origina en Puerto Rico. No obstante, reconoció que Island Finance

Borrower no estaba autorizada a hacer negocios en Puerto Rico, pero contrataba a la apelada para que actuara como entidad de servicios gerenciales centralizados. Por último, sostuvo que los servicios prestados por IFCLLC a favor de Island Finance Borrower eran elegibles para el decreto.[1]

Por su parte, los municipios contestaron la demanda y en apretada síntesis reclamaron que: (1) IFCLLC es dueña de Island Finance Borrower y que los servicios que dice ofrecer no son de exportación, (2) Island Finance Borrower es un alter ego de la apelada y (3) el supuesto servicio fue creado con la intención de defraudar y beneficiarse indebida e ilegalmente de un decreto válidamente concedido.[2]

IFCLLC pidió al TPI que dictara sentencia sumaria a su favor. Su representación legal alegó que la apelada gozaba de un decreto de exención contributiva expedido por la Oficina de Incentivos del Departamento de Desarrollo Económico y Comercio en virtud de la Ley Núm. 20-2012.[3] Sus abogados argumentaron que la exención incluyó, **la contratación de Island Finance Borrower a la apelada como entidad de servicios gerenciales centralizados para los préstamos que adquiere de esta.** La apelada sostuvo que el 20 de noviembre de 2018 recibió un decreto de exención relacionado con los servicios que presta a Island Finance Borrower. Por último, advirtió que el 17 de agosto de 2020 el Departamento de Desarrollo enmendó el decreto y reiteró que los servicios prestados por la apelada a favor de Island Finance Borrower estaban contemplados en el decreto.[4]

La parte apelante reconoció la validez legal de los decretos de exención contributiva. Sin embargo, se opuso a la sentencia sumaria,

---

[1] Véase Sistema Unificado de Manejo y Administración de Casos (SUMAC), entradas número 1 y 5 del Tribunal de primera Instancia (TPI).
[2] Véase SUMAC TPI, entrada número 21.
[3] Ley para Fomentar la Exportación de Servicios de 17 de enero de2012, según enmendada.
[4] Véase SUMAC TPI, entrada número 22.

porque el tribunal tenía que determinar, si los servicios que la apelada presta a Island Finance Borrower para la administración de los préstamos, formaban parte del decreto y estaban autorizados en la Ley Núm. 20-2012, *supra.* Su representación legal sostuvo que precisamente había que determinar, si esos servicios eran elegibles para la exención contributiva de acuerdo con el decreto y la ley. Según la apelante, la Ley Núm. 20-2012, condiciona la exención a que los servicios no tengan nexo causal con Puerto Rico y los préstamos se otorgaron a residentes de esta isla.[5]

El TPI realizó una extensa Vista Argumentativa para aclarar sus dudas. Posteriormente, las partes presentaron escritos para sustentar sus alegaciones. Finalmente, el foro recurrido resumió la controversia a determinar; si *el servicio gerencial centralizado* que presta IFLLC a su entidad relacionada extrajera- Island Finance Borrower está o no cobijado bajo la exención contributiva del Decreto Número 18-20-S-219 del 20 de noviembre de 2018 (Decreto Ley 20), según enmendado el 17 de agosto de 2020 (Enmienda al Decreto Ley 20), que le fuera concedido el 17 de agosto de 2020 (Enmienda al Decreto Ley 20), que le fuera concedido a IFLLC por el Departamento de Desarrollo Económico y Comercio (DDEC) al amparo de la Ley Número 20 del 17 de enero de 2012 (Ley 20 - 2012).

No obstante, antes de resolver la moción de sentencia sumaria, el TPI atendió las alegaciones de la apelante de que necesitaba realizar descubrimiento de prueba. El TPI advirtió que no presentaron una declaración jurada para sustentar la necesidad de realizar descubrimiento de prueba, conforma a la Regla 36.6 de Procedimiento Civil. 32 LPRA Ap. V. Según el foro primario ninguno de los municipios solicitó una oportunidad para deponer a la testigo María Luisa Ayala González anunciada por la apelada. El tribunal hizo hincapié en que el

---

[5] Véase SUMAC TPI, entrada número 25.

Municipio de Caguas presentó el testimonio que la señora Ayala ofreció en el procedimiento administrativa y alegó que era incompatible con el que el dio en la declaración jurada. Así las cosas, el foro primario dictó sentencia sumaria favor de la apelada, porque no encontró controversia sobre los hechos siguientes. Island Finance LLC es una entidad debidamente autorizada para hacer negocios en Puerto Rico y tiene oficina y empleados en los municipios apelantes. Una de sus actividades es la venta de préstamos originados en Puerto Rico a una entidad jurídica foránea llamada Island Finance Borrower. Además, Island Finance Borrower, es una entidad relacionada y totalmente poseída por la apelada, no tiene oficinas y tampoco está autorizada a hacer negocios en Puerto Rico. La apelada, sí está autorizada a hacer negocios en Puerto Rico y aprueba y concede los préstamos y presta el dinero a los clientes en Puerto Rico. La mayoría de los préstamos que concede es a residentes de Puerto Rico. La apelada tiene oficinas físicas y empleados en los municipios de Caguas y San Juan. Ambas llevan libros separados, no mezclan sus patrimonios y no comparten empleados.[6]

El foro apelado, además, determinó los hechos a continuación. La actividad de conceder y generar préstamos que realiza la apelada no está cobijada como exenta en la Ley Núm. 20-2012, ni en sus enmiendas. La apelada reporta y paga patentes municipales a los apelantes por los ingresos producto de la generación y concesión de préstamos. Una vez concede el préstamo lo vende y transfiere a Island Finance Borrower, que se convierte en titular y dueño de la deuda y sus intereses. La enmienda al decreto no eximió a la apelada del pago de contribuciones por la venta y transferencia de préstamos a Island Finance Borrower. La única operación de Island Finance Borrower es la tenencia de los préstamos generados por la apelada en Puerto Rico.

---

[6] Véase Sentencia, SUMAC entrada número 99.

Island Finance Borrower es la propietaria de los intereses generados por dicho préstamo.[7]

El 30 de junio de 2017, la apelada y Island Finance Borrower otorgaron un contrato. El 11 de junio de 2021 enmendaron dicho contrato. **Ambas acordaron que la apelada actuaría como entidad de servicios y brindaría servicios gerenciales centralizados a Island Finance Borrower, por los préstamos adquiridos.** El 10 de octubre de 2018 la Oficina de Incentivos Contributivos del Departamento de Desarrollo Económico circuló un proyecto de decreto a ambos municipios. Ninguno de los municipios presentó objeción. El 20 de noviembre de 2018, la Oficina de Exención del Departamento de Desarrollo Económico y Comercio otorgó un decreto, mediante el que concedió a la apelada una exención de un 60% del pago de patentes municipales, relacionada a los servicios que le presta a Island Finance Borrower. La vigencia del decreto es 20 años. **La apelada solicitó que fuera enmendado para aclarar los municipios y servicios que estaban cobijados.** El 20 de febrero de 2020, la Oficina de Incentivos Contributivos solicitó a ambos municipios que se expresaran. El municipio de Caguas no estuvo de acuerdo con las enmiendas porque tenía ciertas inquietudes sobre las actividades cubiertas. El 17 de agosto de 2020 el Departamento de Desarrollo Económico autorizó las enmiendas y aclaró que:

> "Moreover, the eligible services specified herein shall be rendered among others foreign clients to a non-resident entity related party of Grantee with no employees or office or any presence in Puerto Rico under the provisions of Article 3(k)(viii) and (xvii) of the Act, provided that the eligible operations shall be carried out as described in the Application, and subject to the compliance with the provisions of Article 3 (f) and (m) of the Act and the regulations issued thereunder;" (Énfasis en el documento original.)

El TPI determinó que la operación comercial de la apelada está dividida en tres actividades distintas que son la:

---

[7] Id.

1. originación y generación de préstamos en su inmensa mayoría a personas naturales y o jurídicas residentes en Puerto Rico,

2. venta y transferencia a Island Finance Borrower de préstamos (pagaré) originados en Puerto Rico y

3. **prestación de servicios gerenciales centralizados a Island Finance Borrower para administrar los préstamos que le vendió y transfirió.**

Consecuentemente, el foro primario concluyo que las dos primeras actividades no estaban exentas del pago de contribuciones conforme al decreto de la Ley Núm. 20-201. Según el TPI, el Departamento aclaró expresamente en la enmienda al decreto, que la venta de préstamos a una entidad foránea no era elegible para exención contributiva. **No obstante, entendió que la prestación de servicios gerenciales centralizados era elegible bajo el decreto de la Ley Núm. 20-2012, siempre que fuera para beneficio exclusivo de una entidad foránea.**

El foro apelado no avaló a los municipios, porque para efectos de la Ley Núm. 20-2012: 1) **e*l nexo con Puerto Rico no debe evaluarse a base de donde se originó el préstamo o de a quien se le prestó todo el dinero, lo importante es a quien se le presta el servicio gerencial centralizado para administrar los préstamos;*** 2) la apelada declara su volumen de negocio y paga patente a ambos municipios por concepto de originación, generación y concesión de préstamos a residentes de PR; 3) la apelada no reclama que la Ley Núm. 20-2012 confiere una exención contributiva por originar y conceder un préstamo a una persona natural y o jurídica en Puerto Rico o fuera de PR; 4) IFCLLC no reclama que la Ley Núm. 20-2012 le confiere una exención contributiva por vender a Island Finance Borrower la cartera de préstamos; 5) l**a apelada reclama exención contributiva por prestar servicios gerenciales centralizados a su entidad financiera relacionada; 6) el Departamento evaluó la**

**estructura corporativa de la apelada y sus actividades relacionadas previo a concederle el decreto; 7) el Decreto de la Ley Núm. 20-2012 fue concedido precisamente en consideración a los servicios gerenciales centralizados que se van a prestar a una entidad foránea relacionada a la apelada.[8]**

Según el TPI, del testimonio de la representante del municipio de Caguas podía concluirse que: (1) no existía controversia de que Island Finance Borrower no tenía empleados, ni local para operar su negocio en Puerto Rico; (2) la testigo desconocía que la apelada prestaba servicios gerenciales centralizados a Island Finance Borrower y la relación entre ambas; (3) no consideró la actividad de servicios gerenciales centralizados en la auditoria; (4) la auditoria se basó en la de venta de préstamos, a pesar de que el Departamento de Desarrollo Económico aclaró que esa actividad no era elegible bajo la Ley Núm. 20-2012; (5) desconocía que el dueño de los préstamos era Island Finance Borrower y no la apelada; **(6) declaró que existía un nexo con Puerto Rico que impedía la aplicación del decreto, porque los préstamos que la apelada vendía a Island Finance Borrower se originaban en la isla y se otorgaban a personas de aquí; (7) no consideró la relación de servicios entre la apelada y Island Finance Borrower** y (8) el Municipio de Caguas notificó la deficiencia contributiva, sin documentos en apoyo, porque la apelada no le proveyó información suficiente.

El tribunal no perdió de perspectiva que los municipios basaban su derecho al cobro de patentes en; (1) los ingresos que recibía la compañía extranjera Island Finance Borrower por los intereses que generaban los préstamos que le vendía la apelada, y en (2) **el servicio gerencial centralizado que la apelada brindaba a Island Finance Borrower para administrarlos.** El foro primario dio importancia a que:

---

[8] Id.

**(1) Island Finance Borrower era el titular de los préstamos, independientemente del lugar que se originaron y a que era una entidad extranjera no autorizada a hacer negocios en PR y (2) el reclamo de incentivo estaba basado en el servicio de administración centralizada que la apelada presta para beneficio exclusivo de Island Finance Borrower**. No obstante, no dio importancia al hecho de que los préstamos eran concedidos a residentes de PR. Por último, advirtió que, en el caso particular del municipio de Caguas, su testigo reconoció que notificó la deficiencia contributiva, sin considerar la prestación del servicio general centralizado y sin documentos que apoyaran sus conclusiones.

En fin, el 8 de agosto de 2025, el TPI dictó la sentencia sumaria apelada en la que relevó a IFCLLC del pago de las cantidades reclamadas por patentes municipales. La parte apelante pidió reconsideración que fue denegada.

Aún inconforme, la parte apelante presentó este recurso en el que alega que:

> EL TRIBUNAL DE PRIMERA INSTANCIA COMETIO GRAVE ERROR DE DERECHO EN ACOGER MOCIONES DE SENTENCIA SUMARIA QUE NO CUMPLEN CON LOS REQUISITOS DE FORMA Y CONTENIDO DISPUESTOS POR LA REGLA 36.3 DE PROCEDIMIENTO CIVIL Y LA JURISPRUDENCIA APLICABLE.
>
> EL TRIBUNAL DE PRIMERA INSTANCIA COMETIO GRAVE ERROR DE DERECHO EN RESOLVER MOCIONES DE SENTENCIA SUMARIA SIN QUE LOS PROMOVIDOS MUNICIPIOS DE CAGUAS Y SAN JUAN TUVIERAN LA OPORTUNIDAD DE EFECTUAR DESCUBRIMIENTO DE PRUEBA.
>
> EL TRIBUNAL DE PRIMERA INSTANCIA COMETIO GRAVE ERROR DE DERECHO AL DECLARAR CON LUGAR MOCIONES DE SENTENCIA SUMARIA, SIN LA REALIZACION DEL DESCUBRIMIENTO DE PRUEBA Y A PESAR DE QUE DEL MISMO TESTIMONIO BAJO JURAMENTO DE LA PRINCIPAL OFICIAL FINANCIERA DEL RECURRIDO OFRECIDO EN LA VISTA ADMINISTRATIVA SE CONFIRMA QUE LAS OPERACIONES SOBRE LAS CUALES ISLAND FINANCE RECLAMO LA EXENCION DEL PAGO DE PATENTES NO ERAN ELEGIBLES CONFORME AL DECRETO.

## II

### SENTENCIA SUMARIA

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. *Soto y Otros v. Sky Caterers*, 2025 TSPR 3; 215 DPR _____ (2025). No obstante, para que proceda es necesario que, de los documentos no controvertidos, surja de que no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *BPPR v. Cables Media*, 2025 TSPR 1, 215 DPR ____ (2025); *BPPR v. Zorilla y otros*, 214 DPR 329, 339 (2024); *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024), *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra.* La sentencia sumaria no puede dictarse cuando; (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Consejo Tit. v. Rocca Dev. Corp.*

*et als*, 2025 TSPR 6, 215 DPR ___ (2025); *Universal Ins. y otro v. ELA y otros,* supra, pág. 472.

El Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia, al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra,* y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan los requisitos de forma codificados en la Regla 36, *supra.* El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa es una tarea del Tribunal de Primera Instancia. La revisión que hace el Tribunal de Apelaciones es la de un juicio de novo. El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Consejo Tit. v. Rocca Dev. Corp. et als*, supra; *Soto y Otros v. Sky Caterers*, supra; *BPPR v. Cables Media,* supra; *Cruz, López v. Casa Bella y otros,* supra; pág. 924, *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

### LA LEY DE EXPORTACIÓN DE SERVICIOS, LEY NÚM. 20-2012

El legislador identificó la exportación de servicios como una oportunidad de crecimiento y desarrollo económico para Puerto Rico. La Ley Núm. 20-2012 fue legislada para incentivar el desarrollo de compañía locales o que quieran localizarse en Puerto Rico para expandir su capacidad de exportación de servicios e insertar a la isla en una economía global. La intención del legislador es convertir a Puerto Rico en un mercado para ofrecer servicios a otras jurisdicciones. La política pública establecida en la Ley Núm. 20-2010 fomenta una industria dirigida a la exportación de todo tipo de servicios, mediante

la concesión de incentivos contributivos a los proveedores locales. El legislador pretendió motivar a los proveedores locales a expandir sus negocios, mediante el ofrecimiento de servicios a clientes localizados fuera de Puerto Rico. Además, tuvo la intención de incentivar proveedores extranjeros a establecerse en Puerto Rico y así crear mayores oportunidades de empleo. Exposición de Motivos y Artículo 2 de La Ley Núm. 20-2012.

Cualquier persona con un negocio establecido en Puerto Rico o que se proponga establecerlo y que cumpla con los requisitos, podrá solicitar los incentivos contributivos concedidos en la Ley Núm. 20-2012. Los requisitos que tiene que cumplir un negocio para ser eligible son: (1) tener una oficina o establecimiento *bonafide* localizado en Puerto Rico, (2) llevar a cabo o poder llevar a cabo servicios elegibles y (3) que dichos servicios también sean de exportación o promoción. Artículo 3 de la Ley Núm. 20-2012, 13 LPRA sección 10831(f). Un servicio elegible para exportación es aquel que se presta para beneficio de un individuo que no es residente en Puerto Rico, o una entidad extranjera y (2) **no puede tener nexo causal con Puerto Rico.** El legislador dispuso que el nexo causal con Puerto Rico ocurre, cuando existe una relación con la isla, e incluye los servicios relacionados a (1) actividades de negocios o a la producción de ingresos que han sido o serán llevados a cabo en Puerto Rico. 13 LPRA sección 10831 (h). El secretario en consulta con el secretario de Hacienda podrá establecer mediante reglamento cualquier otro criterio, requisito o condición para que un servicio sea considerado de exportación, tomando en consideración la naturaleza de los servicios prestados, los beneficiarios directos o indirectos y cualquier otro factor pertinente para lograr los objetivos de este capítulo. 13 LPRA sección 10831.

El legislador hizo un listado de los servicios por los cuales podrá recibirse exención contributiva para el pago de impuestos municipales. No obstante, el legislador hizo la advertencia expresa de que

únicamente gozaran de exención los servicios de exportación. Nuestra asamblea legislativa, determinó como elegibles los *servicios gerenciales centralizados que incluyen, pero no se limitan* a servicios de dirección estratégica, planificación, distribución, logística y presupuestarios llevados a cabo por la compañía central u oficinas similares regionales por una entidad dedicada a la prestación de dichos servicios. Además, serán elegibles los servicios de planificación estratégica y organizacional de procesos, distribución y logística para personas fuera de Puerto Rico. Igualmente, son elegibles los servicios de banca de inversiones y otros servicios financieros como, *pero sin limitarse el manejo de activo*, inversiones alternativas, actividades relacionadas a inversiones de capital privado, fondos de cobertura o de alto riesgo, pools de capital. Además de la administración de fideicomisos y de cuentas plica, siempre que dichos servicios sean provistos a personas extranjeras, 13 LPRA sección 10831, k (8) y (17). Las exenciones incluyen el pago de patente municipal y otros impuestos municipales. El legislador concedió una exención de 60% en esos casos aplicable al volumen de negocios y según lo dispuesto en el Artículo 6 de la Ley Núm. 20-2012. 13 LPRA sección 10833(a).

La naturaleza de los decretos está contenida en el Artículo 10, 13 LPRA sección 10838. Según consta en dicho artículo:

1.	Los decretos son un contrato entre el negocio elegible, sus accionistas, socios o dueños y el Gobierno de Puerto Rico, constituyen la ley entre las partes y se interpretaran liberalmente y cónsono con el propósito de promover el desarrollo socio económico de Puerto Rico.

2.	Los beneficiarios del decreto están obligados a llevar a cabo sus operaciones sustancialmente como las representó en su solicitud, excepto cuando han sido variadas mediante enmiendas a petición del concesionario y autorizadas por el secretario.

3.    Todas las determinaciones y decisiones del secretario sobre la concesión de un decreto y su contenido serán finales y no podrán ser revisadas judicial, administrativamente ni mediante otro recurso, a menos que se disponga específicamente de otra forma.

4.    Ninguna instrumentalidad pública, subdivisión política, corporación pública o municipio del Gobierno de Puerto Rico que no sea el secretario podrá impugnar la legalidad de un decreto.

**III**

La parte apelante cuestiona la adjudicación sumaria del caso a favor de Island Finance LLC. Según la apelante; (1) la apelada incumplió con la Regla 36.3, (2) el TPI no le dio oportunidad de realizar descubrimiento de prueba y (3) la actividad por la que se solicita el incentivo no está cobijada por el decreto, ni por la Ley Núm. 20-2012. La representación legal de la apelante aduce que la administración de los préstamos no es un servicio central generalizado. Además, sostiene que la administración no está cobijada por la Ley Núm. 20-212 porque ese servicio tiene un nexo causal con Puerto Rico. Según la apelante, ese servicio es realizado por los empleados de la apelada en Puerto Rico y la apelada opera como un agente o representante para poder cobrar los préstamos.

Por su parte, IFCLLC alega que la apelante no puede cuestionar la concesión del incentivo, porque la administración de los préstamos está contemplada en el decreto. Su representación legal argumenta que Island Finance Borrower contrató a la apelada para que actuara como una entidad de servicios, que administrara sus préstamos y que esa gestión forma parte del decreto enmendado. Por último, sostiene que los municipios cuestionaron la inclusión de los servicios de administración en el decreto, durante el trámite administrativo. No

obstante, el Departamento de Desarrollo Económico validó su inclusión.

Ambas partes reconocen la validez legal del decreto en la que el Departamento de Desarrollo Económico concedió expresamente a la apelada exención contributiva por los servicios gerenciales centralizados que realiza para Island Finance Borrower. No obstante, los municipios alegan que el servicio de administración de los préstamos no es un servicio central generalizado. La apelante ha alegado la necesidad de descubrir prueba. Sin embargo, fue la propia apelante quien pidió al TPI que adjudicara la moción de sentencia sumaria. El 6 de junio de 2023 presentó BREVE MOCION CONJUNTA PARA QUE SE ADJUDIQUE MOCION DE SENTENCIA SUMARIA Y SOLICITUD DE ORDEN. Su representación legal informó que no había realizado el descubrimiento de prueba ni gestión adicional de clase alguna, en espera de que el tribunal resolviera la moción de sentencia sumaria. La apelante pidió al TPI que dispusiera de la moción de sentencia sumaria para continuar los trámites ulteriores. Ahora no puede ir contra sus propios actos y alegar que el tribunal no debió adjudicar la moción de sentencia sumaria sin darle la oportunidad de descubrir prueba.

La controversia en este caso es de estricto derecho, y se reduce a determinar, si el servicio de administración de los préstamos que la apelada realiza para Island Finance Borrower está incluido en el decreto y, por consiguiente, goza de exención contributiva.

Los argumentos de la apelante de que la administración de los préstamos no forma parte de los servicios gerenciales centralizados y que tampoco está contemplado en la ley no nos persuaden. El legislador no hizo un listado taxativo de los servicios gerenciales centralizados que gozan de exención contributiva. Por el contrario, advirtió expresamente que no se limitaban a los mencionados en la ley. Así dejó la puerta abierta para incluir otros servicios como parte de los servicios

gerenciales centralizados. Además, reconoció exención contributiva a los servicios de banca de inversión que incluyen, pero no se limitan, al manejo de activos. Sin lugar a duda, la administración de préstamos constituye un manejo de activos, ya que los préstamos generan ganancias e intereses.

El Municipio de San Juan no puede negar su conocimiento sobre la inclusión de los servicios de administración en el decreto. El 11 de octubre de 2019 envió un correo electrónico al Departamento de Desarrollo Económico y Comercio, donde cuestionó la inclusión de los servicios de cobro, recibo de pagos por teléfono y los servicios correspondientes a los préstamos. Por lo que respecta al Municipio de Caguas, en el decreto se evidenció su participación en el proceso, porque consta su falta de endoso. Igualmente, se presentó como evidencia el correo que envió al Departamento expresando su oposición al decreto. Los municipios apelantes alegan que el servicio provisto por la apelada tiene un nexo causal con Puerto Rico. Su representación legal sostiene que el servicio de administración de los préstamos es realizado por los empleados de la apelada en sus oficinas en Puerto Rico y esta opera como un agente o representante de Island Finance Borrower. Además, aduce que los préstamos se originan en Puerto Rico y que se otorgan a residentes de isla. Los planteamientos de la apelante son un ataque directo al decreto, al que previamente reconoció validez. Su ataque al decreto no procede por disposición expresa del legislador. Nuestra asamblea legislativa confirió carácter de finalidad a los decretos y a su contenido. Además, dispuso expresamente que los decretos no eran revisables judicialmente, salvo disposición en contrario. Fue enfática en que ninguna, instrumentalidad pública, incluyendo a los municipios, podía impugnar la legalidad de un decreto.

Por eso, cualquier ataque de la apelante a la legalidad del decreto es contrario a derecho. No obstante, la administración de los préstamos no tiene un nexo causal con Puerto Rico, que impida la otorgación del

decreto y la concesión de la exención contributiva. Cualquier interpretación sobre la Ley Núm. 20-2012, tiene que estar basada en fomentar la industria de servicios a clientes localizados fuera de PR. La intención del legislador es traer a clientes que no tenga contactos con Puerto Rico a invertir en la economía local. La entidad a la que la apelada presta sus servicios cumple con el objetivo de la ley, porque es una entidad jurídica foránea, que no tiene oficinas y no está autorizada a hacer negocios en la isla.

Este tribunal hizo un juicio de novo de la totalidad la prueba y concluyó que el TPI actuó correctamente al declarar sumariamente la nulidad de las notificaciones finales de deficiencias contributivas. La sentencia sumaria procede como un asunto de derecho. La apelada goza de una exención contributiva, concedida mediante un decreto que por ley no puede ser cuestionado por los apelantes.

## IV

Por los fundamentos antes expuesto, se confirma la sentencia sumaria apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones